We move to the third case this morning, Daugherty v. Harrington. Good morning, your honors. May it please the court. My name is Sean Hennessey, and I represent Kenneth Daugherty. Your honors, conflicting evidence in the record before the court requires a jury to decide whether the defendant appellees in this action violated Mr. Daugherty's constitutional rights by retaliating against him for erring grievances about his conditions of confinement at Menard Correctional Center, and by failing to even attempt to resolve or respond to the conditions of which Mr. Daugherty grieved. Defendant Page, in this matter, agrees that disputed facts created by Mr. Daugherty's for the reasons that follow, those disputed facts and others similarly make summary judgment inappropriate with respect to Mr. Daugherty's remaining claims. Mr. Daugherty accordingly respectfully requests this court to vacate the district court's grant of summary judgment in favor of the defendants on his retaliation conditions of confinement and conspiracy claims. The court should conclude that summary judgment in favor of the defendants on Mr. Daugherty's retaliation claims is inappropriate for two reasons. First, the district court erred in granting summary judgment to Defendant Page on Mr. Daugherty's retaliation claim. The district court's error in this regard is no longer in dispute. Defendant Page agrees that Mr. Daugherty presented sufficient evidence such that a jury could return a verdict in his favor on his First Amendment retaliation claim. But this concession should not be limited to Mr. Daugherty's retaliation claim against Defendant Page because the district court further erred in granting summary judgment in favor of Defendant Harrington on this same claim. Well, there isn't any evidence that he had any interaction with your client before this May 16th supposedly phony disciplinary ticket. There is some evidence, Your Honor, in Mr. Daugherty's testimony. Mr. Daugherty testified that he filed grievances related to the conditions of his confinement, naming both Lieutenant Page and, at the time, Assistant Warden of Manila. Well, filing grievances is not interaction between the prisoner and the prison official that is accused of retaliating against him. Agreed, Your Honor. Mr. Daugherty further testified that Defendant Harrington instructed Mr. Daugherty to cease writing grievances, just like Defendant Page did. What happened to those grievances? Your Honor, we don't have them. We requested them... What did the State or the Warden and the Lieutenant say what happened? So, both defendants in this action have no recollection of Mr. Daugherty, the incident... Was any search made for them? I believe so, Your Honor. We certainly requested them and we were unable to locate the grievances. Back to what you just indicated, did your client really testify that he told Defendant Harrington to stop, or that Defendant Harrington told him to stop writing grievances? There was some general testimony from your client that he had been warned to stop writing grievances, but looking at that deposition testimony, it's not clear that pertains to Mr. Harrington and conflicts with, as Judge Sykes pointed out, the testimony from your client that he never complained to or really had any interaction with Mr. Harrington until the event in the cafeteria. Your Honor, I agree that the evidence in the record is stronger with respect to Defendant Page and the interactions that Mr. Daugherty had with Defendant Page. But the question was a little different. It's certainly stronger, but what's the evidence to support the retaliation claim against Mr. Harrington in light of your client's own testimony? Beyond that testimony, Your Honor, I think that a jury could reasonably infer from Mr. Daugherty's inmate disciplinary report that led to his segregation that a retaliatory intent existed on behalf of both defendants. So this inmate disciplinary report, cited as its sole justification for Mr. Daugherty's placement in segregation, this derogatory incendiary statement. Now, Mr. Daugherty... Who did they get the forms, the whatever they filed? Where do they come from? I'm sorry, Your Honor? Where do those forms come from that they used to file? Or is it handwritten? Your Honor, it is a partly typed, partly handwritten form. They fill in the... Exactly right. So there's essentially a complaint placed against Mr. Daugherty. The inmate disciplinary report charges him with violating certain prison disciplinary rules, and there is a narrative that explains what serves as the basis. Who do they submit those complaints to? The inmate disciplinary reports are ultimately submitted to an adjustment committee, which is also... Well, initially, where do they go? Initially, the responding officer writes up this narrative and then forwards it along to the Menard Correctional Center Adjustment Committee for a formal determination of the punishment. Was Mr. Page a responding officer? He was. He was, Your Honor. So the facts of the incident are these. Mr. Daugherty was returning from exercise outside, and he's in a procession line. While he's in that line, Defendant Page pulls him out of the line and accuses Mr. Daugherty of making a racially derogatory incendiary comment. Defendant Page takes Mr. Daugherty over to... What was the nature of the derogatory statement? One white and one black? I'm sorry, Your Honor. Tell me the nature of the derogatory statement. Sure. The nature of the alleged derogatory statement is that Mr. Daugherty said that essentially that the correctional officers on duty were looking for an excuse to shoot certain inmates. Based on race? There is a racially insensitive term included in the alleged statement. Your client is black? He is. He is. So, Your Honor, Lieutenant Page takes Mr. Daugherty out of line, brings him over to Defendant Harrington, and the narrative to this inmate disciplinary report states that Mr. Daugherty self-admitted to making the statement to Defendant Harrington. Mr. Daugherty testified to exactly the opposite. And that was a narrative that Defendant Page wrote? Correct. Correct. Defendant Page drafted this inmate disciplinary report. However, the report of the final summary report from the Menard Committee that ultimately determined the proper punishment here included as one of its bases for decisions that Defendant Harrington stated that the inmate disciplinary report is correct as written. And so, while we certainly acknowledge that Defendant Page drafted the inmate disciplinary report, whether or not Defendant Harrington ratified that report, or at least the accuracy of it, should be reserved for adjournment. So, there's a written grievance that ultimately, in this case, went to Mr. Page, right? Correct. Does he make his entries on that grievance itself, or is it an attachment or a separate document? It is on the form itself, not a separate attachment, Your Honor. So, we still didn't find the grievances, but the board ruled based on what was said on that form, the inmate's contentions and the officer's response, right? That's correct. And it's really, it's more limited to the officer's statements in that form. But it does have the inmate's complaint. Oh, I apologize, Your Honor. I was referring to the inmate disciplinary report. You are correct, yes. There are these grievance forms. So, it went to the board. We know that, then, because they ruled on it, right? We know the, I think I was talking about two separate things. The inmate disciplinary report went to a board. I am not sure if a grievance form filed by Mr. Doherty went to a board. So, as to Defendant Harrington, you still have to show that your client's protected speech was a motivating factor in his actions with respect to this disciplinary action. What is your evidence against Defendant Harrington that he even knew about these prior grievances? Your Honor, aside from his admittedly more general testimony that he was warned to stop naming Defendant Harrington in his grievances, both Defendant Harrington and Defendant Page had responsibility for the North cell houses of Menard. Mr. Doherty testified. Is there any evidence that, as part of that responsibility, that Defendant Harrington had the responsibility for reviewing grievances, knowing about grievances? There is, Your Honor. There is testimony from all parties that the defendants made what they call rounds of the North cell house, and they would occasionally collect grievances from inmates, listen to oral complaints from inmates, and sometimes elevate those complaints up to maintenance or repair. I'm sorry. Is there any evidence linking that to Defendant Harrington? The fact that he walked around and generally may have heard grievances, we know he didn't hear any of your clients, because your client testified he didn't have any interactions with him. I'm trying to nail you down on exactly what your evidence is against Defendant Harrington, other than somewhat tangential, what you've just identified on the inmate report. Your Honor, most specifically, the evidence is limited to Mr. Doherty's testimony that he was warned to stop naming Defendant Harrington in his grievances. Warned by whom? It is. It is unclear. That's not enough to support a jury verdict against Mr. Harrington. Well, I think it's more that there is an inference that I think can be drawn from this inmate disciplinary report. If a jury were to... That's the retaliatory act. That can't possibly be the protected speech that precedes the supposedly retaliatory act. Can't be both. I agree. But the defendants don't dispute that they were aware of Mr. Doherty's engagement in protected speech. They both acknowledge in their briefing that Mr. Doherty not only filed grievances, but made oral complaints. But that's different than saying they don't dispute that Defendant Harrington knew at the time that he was filing grievances. That's separate. I don't see their briefs as conceding that Defendant Harrington knew at the time that your client was filing grievances. You're right. That's fair. I agree. I still would circle back to Mr. Doherty's testimony that he was instructed to stop naming Defendant Harrington on his grievances. And that occurred before the retaliatory act in the form of this inmate disciplinary report. That could have been done by Mr. Page on his own. I think that that is a possible inference. But another inference is that it was done by Defendant Harrington on his own. And I think a jury could just as easily reach that conclusion as the other. Your Honor, moving to Mr. Doherty's conditions of confinement claim, the court should also vacate the district court's grant of summary judgment with respect to both defendants on this claim. And again, as to Defendant Harrington, other than the fact that you've identified that he walked around the division where your client was housed, do you have any other evidence that Defendant Harrington knew of any of the conditions in plaintiff's cell? No, we don't, Your Honor. It is based on Defendant Harrington's vicinity to Mr. Doherty's cell and his responsibility for that cell house. However, this court has previously established that this subjective knowledge of an inmate's complaints can be based on circumstantial evidence. And in Vinning L. v. Long, the circumstances were fairly similar to the evidence in this case. In that case, the court ruled that deliberate indifference could be found on behalf of two defendants because they patrolled the area in which the plaintiff's inmate resided. The plaintiff's conditions in that case were similar conditions that would be readily viewable to somebody patrolling the area in the form of sewage present in the cell, pest infestations. Does it matter here that Defendant Harrington's job title was, he was in charge of security versus the other case where they had a different job title that was more applicable to conditions in the facilities? Your Honor, I don't think so. Because Defendant Harrington's job title, while it is based around security, in prison records, security relates to the safety of inmates, including the safety of their shelter and of their cells. So I think it is fair to infer that Mr. Doherty, or Mr. Defendant Harrington, would also be responsible for the safety of these cells. And Your Honor, the conditions that Mr. Doherty endured were, there is evidence in the record to establish that they were sufficiently serious to warrant constitutional protection. Mr. Doherty testified that he endured for over 90 days raw sewage backup in his cell sink, various pest infestations in his cell, including spiders, roaches, water bugs, and mice, additional insect infestations in the communal showers, ventilation so clogged that the vents looked like dirty cotton and would not produce any airflow, darkness in his windowless cells, such that he could only get enough light to read or write if he was cramping himself against the bars of his cell, undersized and overcrowded cells, refusals by prison staff to provide any hygienic materials to attempt to combat these conditions, and a lack of cool drinking water while he was in segregation. Your Honor, Mr. Doherty's testimony demonstrated that he suffered all of these conditions from April through June 2012. And this court and others have previously held that many of the complaints that Mr. Doherty had qualified as sufficiently serious. Tell me again where these grievances go after they're submitted to the officer. I think the officer makes a response to the grievance, right? Sometimes. I think there are multiple ways for this to go up the chain. I understand that inmates are able to provide grievances to people with the title of grievance officer. They can also provide these grievances to the lieutenants or assistant wardens making the page or defendant Harrington. And I know that there are also boxes on the walls of the prison where you can insert these grievances. Where do they go from there? I believe that they go to someone who will look at the grievance and see if it requires a response. Who is that someone? What title would that someone have? I think it can depend, but I think typically a grievance officer. But that's not the only way to get the form to a grievance officer. And then what happens? The officer will make a ruling as to whether the condition is legitimate and if it requires a response. So he's the final word, he or she's the final word. There's an appeal process also where it goes up to, I believe it's a committee, and then that would be the final word. But it is more of the same. That didn't happen in these cases. It did not, Your Honor. Mr. Doherty filed his grievances or presented them to officers and he did not hear back about them. Your Honor, I'd like to reserve the rest of my time for rebuttal. Thank you. May it please the court. I'm Assistant Attorney General Linda Boachianza on behalf of Richard Harrington and Kevin Page. Settled law provides that although the Constitution does not permit inhumane prisons, it also doesn't mandate comfortable ones. The conditions that- Counsel, would you tell me, do you believe that your opposing counsel fairly stated the process by which these grievances are handled? No, Your Honor. So what happens is that an inmate writes a grievance and he can either submit it into a box, I think counsel indicated that, or he can hand it to an officer. What happens next is that it goes to a grievance counselor. The counselor reviews the grievance and if he or she is able to resolve whatever issue, then they'll do so. If the inmate's not satisfied with the counselor's response, then it'll go on to a grievance officer who will review and then act to either resolve the issue or deny it if the issue is deemed not warranted. After that, there's another level. I believe it goes to Springfield. There's a body in Springfield that will again review the grievance to determine whether further action needs to be taken. Do you know what happened in these cases? In this case, you know, some of his grievances are contained in the record and there are responses in the record from the grievance officer and so forth. I can't recall what specifically they said with respect to each grievance. Some of the grievances are in the record? Yes. Are they the ones that are, are they part of the claims made against these? As a matter of fact, on page 82 of the record is the grievance that Doherty wrote about the incident that led to his being sent to segregation. So that grievance is dated May 29th of 2012. And in it, according to Doherty, he, Doherty, told the inmate in front of him to hurry up because officers like to shoot inmates and he, Doherty, didn't want to get shot. So Page's version... But the grievance itself is actually in there. It is in the record on page 82. So Page's version of that incident, which is what caused Doherty to be sent to segregation, includes some expletives and a racial slur. But the essential comment about Doherty saying something about officers liking to shoot inmate or wanting to shoot inmates, both of them agree. Did he agree that he said that? He, he, he wrote that in his grievance. By the time his deposition came around. He meaning who? He meaning Doherty. In his grievance, acknowledged that he said something about officers shooting inmates. We'll see that if we look at page whatever. Page 82 of the record. By the time his deposition came around, you know, he didn't include that earlier acknowledgement. But what he said in May 2012 shows that the statement that he was disciplined for wasn't totally dissimilar to the one that he admitted making. Doherty testified that after Page accused him of making that statement. Page took him to Harrington. Harrington asked Doherty to repeat his comment. Doherty said that he had told another inmate to hurry up and Harrington ordered him to be sent to segregation. So that sequence as described by Doherty doesn't show, as Your Honor was noting, that Harrington's order had anything to do with retaliation because of Doherty's prior grievances. But you concede there is an issue of fact there as to Defendant Page. Yes, we do, Your Honor. And by that concession, are you also conceding that there's an issue of fact as to Page's knowledge of the conditions of confinement that Doherty was complaining about on the second claim? Not the deliberate indifference, I understand that, but the knowledge of conditions. Do you concede that your concession on the first aspect is essentially a concession on element as well? Yes, I think that's right, Your Honor. But to survive summary judgment against either of the defendants on the conditions of confinement claim, Doherty also had to present evidence that Harrington or Page was aware that the conditions posed an excessive risk to his health and that they acted or failed to act despite that awareness. Doherty would have borne the burden of proof at trial, so it was his obligation to go beyond allegations and to present evidence that these officials failed to respond to complaints about the prison conditions or that their responses were so ineffectual that they could be deemed deliberately indifferent. For example, in Lyons v. Vergara, which plaintiff cites, the inmate claimed that prisons were overrun with pests. And in response to the defendant's testimony that the prison hired an exterminator, plaintiff's affidavit that, quote, the bug men only spray outside the cell, never inside, and that roaches crawl in their beds daily. So a statement like that, which is based on the witness's personal observations, raised a factual question about whether the defendants were deliberately indifferent. There's no such evidence in this case. And both Harrington and Page testified to taking reasonable measures to try to improve the conditions, for example, having inmate workers clean the showers and relying on the exterminator and providing inmates with things like a plunger to resolve issues with clogged toilets. And what is the evidence that either of these officers knew of the conditions that the plaintiff is complaining about? It's arguable that just because they were walking the cell block, that's not enough. I would agree, Your Honor, then. So you're taking back the concession you made just a moment ago? Sorry, Your Honor. I would say that, so with Page, according to Doherty, Page overheard them complaining about the conditions. And so I thought that just pertained to the showers. There's some testimony in the plaintiff's deposition that he and other inmates were complaining within earshot of Page about the nasty shower. Right. That's true. And that's the basis for Page's awareness of that particular bad condition. But I don't know that there's any other evidence or he didn't testify that they were witnesses to any other specific conditions. It's all premised on this. They were walking the halls regularly. Certainly, they denied awareness of certain conditions. They did acknowledge that it was warm in the cell houses, and that's something that he complained about. So I suppose that's not a constitutional violation. I'm talking about the specific conglomeration of conditions that he claims amounts to a constitutional violation. Well, certainly, in our view, cases like Sain versus Wood and Harris versus Fleming suggest that a similar sort of combination of conditions as the ones that took place here are not unconstitutional. So here you talked about insects and sewage and so forth in addition to the heat. Yes. And in Sain, there were insects that actually bit the inmate. There was heat. There was a foul odor that emitted from the plumbing. So there were conditions that, as here, are not great. They're unpleasant. But this court found that they were not unconstitutional. My questions had to do with the defendant's knowledge, which is the crux of a delivered indifference claim. And I don't see much evidence, if any, in this record that they were specifically subjectively aware of the conditions about which he is complaining in this lawsuit. And unless they were so obvious that they can be charged with some form of constructive notice, I suppose, based on the fact that they were patrolling the halls, there isn't any evidence that would support a delivered indifference claim, regardless of whether the conditions amounted to a constitutional violation in the first place or their response to it. All we have is his testimony about Page overhearing the inmates complaining about a nasty shower. Right. And that, standing alone, isn't a constitutional violation. Right. There's also evidence. I think Page acknowledged that there were flies or some other sort of pests, but that they responded- Sporadically? I mean, we've got to have notice of an infestation that is not being remedied. Certainly, Your Honor. Because this was on summary judgment, we were sort of taking the evidence of the like most favorable to plaintiff. And he says that there were roaches, et cetera. In his cell. In his cell. But we don't have any evidence that these two officers were routinely in his cell. Right. Or, and he does not claim to have told them about it. Right? That's correct. So, I mean, I don't know what the evidentiary basis for charging them with actual knowledge of his specific complaints and the depth and breadth of them, other than that reference to the nasty shower, which he did testify. But one complaint about a nasty shower on one occasion is not enough to bring an Eighth Amendment claim. Certainly. That's a fair conclusion, Your Honor. And we would say that even if somehow they could have been deemed as aware, the steps that they took demonstrated that they weren't consciously disregarding any excessive risk to his health. Is there any evidence of the record disputing the steps that they took? There isn't, Your Honor. There's none. So turning to the First Amendment retaliation claim, which I think we touched on earlier, summary judgment was certainly proper for Harrington, because there was a lack of evidence about retaliation factoring into the decision to send him to segregation. With respect to the conspiracy claim, he also had to present some evidence that there was an agreement between Harrington and Page to violate his constitutional rights, and there simply was none. So unless this Court has additional questions, we would ask that you vacate and remand the retaliation claim against Page, but otherwise affirm. Thank you. Thank you. Thank you, Your Honors. Just two brief points on rebuttal. First, with respect to the grievance that is included in the record, I apologize for misspeaking. I was considering grievances that would have been filed that predated the retaliatory action, and not those that postdated. So I apologize for failing to recall that. My second point, just to clarify, the defendants did not affirmatively deny Mr. Doherty's recollection of his conditions of confinement. Throughout their testimony, when asked if they recalled issues with Mr. Doherty or his cell in particular, they both stated that they did not recall, which is not evidence that the events did not occur. More generally, both defendants testified that when they were making their rounds of the north cell houses, they would run into things like sewage in the cells, broken toilets, light bulbs that were burnt out, and insects generally. So there is some testimony from the defendants that these conditions existed and that they were aware of them. Your Honor, Mr. Doherty respectfully requests this Court to vacate and remand the Grants of Summary Judgment in favor of the defendants. Thank you. Thank you very much. Counsel, you were appointed in this case, were you? Yes, Your Honor. The Court thanks you for your fine representation. Thank you very much. Thanks to both counsel, and the case is taken under advisement.